IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ROBERT LEE SWAFFORD,

     Plaintiff,

v.                                Civil Action No. 2:14-cv-14511

CAROLYN W. COLVIN, Commissioner
Social Security Administration,

     Defendant.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before this Court is Plaintiff's Motion for Summary Judgment[1] (ECF No. 10), Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) and Brief in Support of Defendant's Decision (ECF No. 12).

### Background

Robert Lee Swafford, Claimant, applied for Disability Insurance Benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act on January 19, 2011,[2] alleging disability beginning on January 1, 2004 (Tr. at 173-179, 180-185). The claims were denied initially on April 25, 2011, (Tr. at 75-79, 80-84), and upon reconsideration on June 9, 2011 (Tr. at 87-89, 90-92). Claimant filed a written request for hearing on July 19, 2011 (Tr. at 94). In his request

---

1 Plaintiff's Motion for Summary Judgment requests this Court remand or reverse Defendant's decision.
2 The record reflects that on January 19, 2011, Claimant scheduled a telephone appointment to complete his applications (Tr. at 171-172). The telephone appointment occurred on January 28, 2011 (Tr. at 173-185).

for a hearing before an Administrative Law Judge (ALJ), Claimant stated that he disagreed with the determination made on his claim because he was disabled and would continue to be disabled for more than 12 months (Tr. at 94).   On September 26, 2012, Claimant appeared via video from Beckley, West Virginia, and ALJ Jack Penca presided over the hearing in Charleston, West Virginia (Tr. at 38-69).   In the Decision dated October 4, 2012, the ALJ determined that based on the application for a period of disability and disability insurance benefits, the claimant was not disabled.   Further, the ALJ determined that based on the application for supplemental security income, the claimant was not disabled (Tr. at 12-37).   On October 18, 2012, Claimant filed a Request for Review of Hearing Decision of the ALJ because all of the evidence was not fairly considered and fully evaluated (Tr. at 6-11).   On February 19, 2014, the Appeals Council found no reason under its rules to review the ALJ's decision and denied Claimant's request for review. The Appeals Council considered the reasons for Claimant's disagreement with the decision, considered records from various sources dated January 23, 1993, through April 5, 2012, reviewed medical records from Beckley Pain Clinic dated October 17, 2012, through January 16, 2013, and found that this information did not provide a basis for changing the ALJ's decision (Tr. at 1-4).

On April 11, 2014, Claimant bought the present action requesting this Court to issue an Order and Judgment reversing the Defendant's decision and remand this matter for entry of an award of disability retroactive to the date of initial disability.

Under 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.   *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).   A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12

2

months . . . ."   42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.   20 C.F.R. §§ 404.1520, 416.920 (2014).   If an individual is found "not disabled" at any step, further inquiry is unnecessary.   *Id*. §§ 404.1520(a), 416.920(a).   The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.   *Id*. §§ 404.1520(b), 416.920(b).   If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.   *Id*. §§ 404.1520(c), 416.920(c).   If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.   *Id*. §§ 404.1520(d), 416.920(d).   If it does, the claimant is found disabled and awarded benefits.   *Id*.   If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.   *Id*. §§ 404.1520(e), 416.920(e).   By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.   *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2014).   The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since January 1, 2004, the alleged onset date. Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of back pain with radiculopathy, obesity, gastroesophalgeal reflux disease, migraines, asthma, anxiety, nasal allergies, osteoarthritis, chronic obstructive pulmonary disease, bipolar disorder, panic disorder, obesity and major depressive disorder, moderate, recurrent with psychotic features (Tr. at 17, 20).   At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in 20 C.F.R. 404 Subpart P, Appendix 1 (Tr. at 22). The ALJ then found that Claimant is unable to perform any past relevant work (Tr. at 29).   The ALJ concluded that Claimant could perform jobs such as assembler, mailroom clerk and laundry worker (Tr. at 30).   On this basis, benefits were denied (Tr. at 30-31).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.   *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

4

Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence, and the court proposes that the presiding District Judge so find.

## Claimant's Background

Claimant was born on July 4, 1979.   In middle school, Claimant was placed in Special Education classes and followed an Individual Education Program (IEP) configured by the Anne Arundel County school system, in Maryland (Tr. at 616-617). His school records identify him as having a Special Learning Disability and required additional time for written assignments and tests[3] (Tr. at 614).   Claimant dropped out of school and later obtained his GED, on his third attempt, while incarcerated.

## Medical Evidence

The Court has reviewed all evidence of record and will discuss it further below.

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that his IQ scores constitute a disabling condition.   Claimant asserts that the ALJ erred in finding that he did not meet the requirements of Listing 12.05. Claimant asserts that the ALJ failed to find that Claimant's mental retardation began prior to the age of 22. Defendant asserts that Claimant does not meet or equal the requirements of § 12.05B because he does not satisfy the diagnostic description in the introductory paragraph to Listing 12.00.

---

[3] Tests were read to Claimant.

Defendant's Brief in Support of Defendant's Decision asserts that Claimant does not have an intellectual disability and that his IQ performance score of 57 is insufficient because the Wechsler Intelligence Scale for Children-Third Edition (WISC-III) test was administered in January 1993, when Claimant was thirteen years old.

<u>Mental Impairments</u>

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments.  20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2014). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.*   First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2014). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2014).   Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2014).   Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2014).   The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme.   The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2014).   A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe,"

unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2014).   Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2014).   Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity.   §§ 404.1520a(d)(3) and 416.920a(d)(3) (2014).

<u>Listing 12.05 Intellectual Disability</u>

Listing 12.05 addresses mental disabilities including mental retardation.   Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. *See* 20 C.F.R. 404 Subpart P, Appendix 1, Listing § 12.05.   In order to satisfy the listing requirements for mental retardation, Claimant must meet the Listing description and one of the following four prongs:

(a) Mental incapacity evidenced by dependence upon others for personal needs and inability to follow directions, such that the use of standardized measures of intellectual functioning included, OR

(b) A valid verbal, performance, or full scale IQ of 59 or less, OR

(c) A valid verbal, performance, or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work related limitation of function, OR

(d) A valid verbal, performance or full scale IQ of 60-70 resulting in at least one of the following: (1)   Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3)   Marked difficulties in maintaining concentration, persistence, or pace; OR (4) Repeated episodes of decompensation, each of extended duration.

A severe impairment[4] is one "which significantly limits your physical or mental ability to do basic work activities. . . ."  20 C.F.R. § 404.1520(c) (2014); *see also* 20 C.F.R. § 404.1521(a) (2014) (defining non-severe).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b) (2014).   Examples of basic work activities are:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations;   and
> (6) Dealing with changes in a routine work setting.   *Id.*

<u>IQ Scores</u>

The IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series.  IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank so that we can determine the actual degree of limitation reflected by the IQ scores. In cases where more than one IQ is customarily derived from the test administered, e.g., where

---

4   The Fourth Circuit has held that a claimant's additional "severe" impairment qualifies as a significant work-related limitation for the purpose of listing § 12.05C.  *Luckey v. Bowen*, 890 F.2d 666 (4th Cir. 1989).  A "severe" impairment is one "which significantly limits [one's] ability to do basic work activities."  20 C.F.R. § 404.1520(c) (2000).  In *Luckey*, the Court ruled that

> Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of § 12.05C.  Further, the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities.   The Secretary's finding that Luckey suffers from a severe combination of impairments also establishes the second prong of § 12.05C.
> *Id.* at 669.

verbal, performance and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05. *See* Listing 12.00 Mental Disorders.

To support his decision the ALJ relied on the fact that "it appeared that the claimant was working" and Claimant's Global Assessment of Functioning (GAF) was reported to be 60 on February 8, 2008.[5]   The ALJ's decision stated the following:

> The claimant testified that he completed the 8th grade; he reported that he was in special education classes with a few students, and he was in special education classes in all subjects.   The claimant reported that he completed his GED while he was incarcerated; he passed the test on his third attempt.   The claimant reported that he took the driver's license test several times, approximately three to four times and eventually a department of motor vehicles employee administered an oral test.
>
> ******
>
> Overall, I find the claimant's credibility to only be fair.   As to the claimant's mental health issues, which he asserts are his main problems, I note first no psychiatric hospitalizations, and treatment has been conservative in nature, for example, no outpatient hospitalizations.   In this regard, reports the claimant provided during the hearing that he becomes faint and light headed around groups of people and has panic attacks at least three to five times a week would necessitate more intensive treatment.   To the extent that such treatment has not been initiated, along with the consideration of the claimant's daily activities, I find the claimant's allegations as to disabling limitations from mental health are not supported (Tr. at 25, 27).

The ALJ did not explain what weight, if any, he gave the scores from the WISC-III test administered on January 27, 1993, by a Nationally Certified School Psychologist in the Anne Arundel County public school system (Tr. at 618). Claimant was fifteen years old at the time of the

---

5  The Southern Regional Jail's Mental Health Chronic Care Clinic Intake form dated February 8, 2008, states that Claimant's GAF is 60, however, there is no indication that tests were administered to arrive at this GAF.

9

test.   The results of the WISC-III were as follows:

| | |
|---|---|
| **Performance IQ:** | **57** |
| **Full Scale IQ:** | **68** |
| **Verbal IQ** | **82** |

In addition to the ALJ's failure to discuss Claimant's performance IQ score of 57, he did not discuss Claimant's school records or Individual Education Program (IEP), both of which are admitted as evidence of record (Tr. at 598-618).   In school, Claimant received eighteen (18) hours of "Special Education and Related Services" per week. Claimant's curriculum followed an IEP and was designated as having a "Specific Learning Disability." Claimant required additional time for written assignments and tests.   Furthermore, his tests were read to him as needed (Tr. at 611-614).

<u>Sentence Four</u>

The Commissioner asserts for the first time in the Brief in Support of Defendant's Decision that Claimant's IQ performance score of 57 should be rejected because it is not current (Tr. at 12). The Commissioner continues to assert in the Brief in Support that Claimant does not meet or equal the requirements of § 12.05B "because he does not satisfy the diagnostic description in the introductory paragraph."   (*Id.*)   The Commissioner argues that a claimant must possess, in addition to the IQ scores outlined in Listing 12.05, a deficit in adaptive functioning before the age of 22.   This position was not contained within the ALJ's decision and is being asserted by the Commission *post hoc*.

<u>Discussion</u>

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence.

"[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision."   *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

The court must address whether the ALJ analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."   *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998).   The court cannot determine if findings are unsupported by substantial evidence unless the Commissioner explicitly indicates the weight given to all of the relevant evidence.   *Gordon v. Schweiker*, 725 F.2d 231, 235-236 (4th Cir. 1984).   The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).   As the ALJ did not discuss the weight given to Claimant's performance IQ score of 57 from the WISC-III test administered on January 27, 1993, before Claimant was age 22, the undersigned cannot find that the ALJ's decision was based upon review of all the evidence of record.

Based on the above, this Court proposes that the presiding District Judge find that the ALJ's decision was not supported by substantial evidence because the ALJ failed to properly weight the evidence of record and explain his findings related thereto.   Because the court has proposed remand on these grounds, the court finds it unnecessary to address the specific issues

raised in the parties' cross-motions for judgment on the pleadings.   Instead, the court proposes that the presiding District Judge deny the cross-motions for judgment on the pleadings.

<u>Conclusion</u>

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge GRANT Complainant's Motion for Summary Judgment seeking remand (ECF No. 10), DENY Defendant's Brief in Support of Defendant's Decision (ECF No. 12), REVERSE the final decision of the Commissioner and REMAND this case for further proceedings pursuant of 42 U.S.C. §405(g)[6].   A sentence four remand is appropriate due to the ALJ's inadequate analysis and explanation as to Claimant's performance IQ score.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings be submitted to the Honorable Judge Thomas E. Johnston.   Pursuant to the provisions of Title 28, United and Recommendation to which objection is made and the basis of such objection.   Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155

---

6 A court may order a remand under sentence 4 of § 205(g) of the Social Security Act, if the court decides that additional development and/or the evaluation of evidence is needed to make a decision in the case.

(1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.


Date:   July 31, 2015.


Dwane L. Tinsley
United States Magistrate Judge


13