IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROBERT LEE SWAFFORD, III,

        Plaintiff,

v.                                      CIVIL ACTION NO.   2:14-cv-14511

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Complaint of Plaintiff Robert Lee Swafford, III seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). (ECF No. 2.) By standing order entered on February 7, 2014 and filed in this case on April 15, 2014, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and recommendations for disposition ("PF&R"). (ECF No. 4.) On July 31, 2015, Magistrate Judge Tinsley entered his PF&R, in which he recommends that this Court grant Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), (ECF No. 10), insofar as it requests remand of this matter, deny Defendant's Brief in Support of Defendant's Decision ("Defendant's Brief"), (ECF No. 12), reverse the final decision of the Commissioner, and remand this case. (ECF No. 13.) Defendant filed timely objections to the PF&R (the "Objections") on August 12, 2015. (ECF No. 14.)

1

For the reasons provided herein, the Court **SUSTAINS** the Objections, (ECF No. 14), **DECLINES TO ADOPT** the PF&R, (ECF No. 13), **GRANTS** Plaintiff's Motion, (ECF No. 10), insofar as it requests remand of this case, **DENIES** Defendant's Brief, (ECF No. 12), **REVERSES** the final decision of the Commissioner, **REMANDS** this case pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order, and **DISMISSES** this action from the Court's docket.

## I. Background

**A.  Pertinent Medical History**

Plaintiff was born on July 4, 1979. (*E.g.*, ECF No. 9-8 at 4.) In middle school, Plaintiff was placed in special education classes and followed an individual education program configured by the Anne Arundel County Public Schools system in Maryland. (*See* ECF No. 9-19 at 15–19.) His school records provide that Plaintiff had a special learning disability and required additional time for written assignments and tests. (*Id.* at 18, 20–21.) Other individuals read tests to Plaintiff "as needed." (*Id.* at 18.) Plaintiff dropped out of school and later obtained his GED—on his third attempt—while incarcerated. (*See, e.g.*, ECF No. 9-2 at 26.)

Plaintiff was administered the Wechsler Intelligence Scale for Children-Third Edition test (the "WISC-III Test") in January 1993 when Plaintiff was approximately thirteen years old. (ECF No. 9-19 at 22.) The WISC-III Test provided the following results: (1) a verbal IQ of 82; (2) a performance IQ of 57; and (3) a full scale IQ of 68. (*Id.*)

During an initial mental health evaluation in February 2008, M. Khalid Hasan, M.D. assessed Plaintiff with dysthymia, anxiety disorder, and a Global Assessment of Functioning ("GAF") score of 60. (ECF No. 9-24 at 56.) Plaintiff refused further mental health treatment until

2

April 2009 when he complained of anxiety and depression due to psychosocial stressors—such as marital discord and legal troubles—and acknowledged that he had not taken psychotropic medication in approximately seven months. (*Id.* at 51 & 53.) A staff physician with PrimeCare Medical assessed Plaintiff with depression and anxiety and rated his GAF score at 60-65. (*Id.*) The physician also restarted Plaintiff on psychotropic medications and instructed him to return in 90 days. (*Id.* at 53.) During follow-up appointments in June and September 2009, the same staff physician determined that Plaintiff's symptoms had improved. (*Id.* at 49–50.)

On March 24, 2011, James Binder, M.D., a state agency psychiatrist, reviewed the evidence in connection with Plaintiff's initial application. (ECF No. 9-18 at 2–21.) Dr. Binder found that Plaintiff has bipolar disorder, panic with agoraphobia, and cocaine dependence in sustained full remission. (*Id.* at 5, 7, 10.) Dr. Binder determined that Plaintiff has moderate limitations in his ability to interact appropriately with the general public, accept instructions, and respond appropriately to criticism from supervisors. (*Id.* at 17–18.) However, Dr. Binder found that Plaintiff has no significant limitations with understanding, memory, sustaining concentration and persistence, and adaptation. (*Id.*) Dr. Binder also noted that—although the record contained a school assessment IQ of 68—Plaintiff did not appear to have an intellectual disability, as he "has a GED and worked [as] a cashier." (*Id.* at 21.) On June 9, 2011, state agency psychologist John Todd, Ph.D. reviewed Plaintiff's medical records and affirmed Dr. Binder's opinion. (*Id.* at 53.)

On April 22, 2011, Atiya M. Lateef, M.D., a state agency physician, reviewed Plaintiff's medical records and assessed that he can lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently, as well as sit, stand, or walk about six hours out of an eight-hour day. (ECF No. 9-18 at 35.) Dr. Lateef also assessed that Plaintiff can never climb ladders, ropes or scaffolds,

3

but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. (*Id.* at 36.) Dr. Lateef further assessed that Plaintiff has no manipulative, visual, or communicative limitations, but he should avoid concentrated exposure to temperature extremes and respiratory irritants. (*Id.* at 37–38.) On May 25, 2011, A. Rafael Gomez, M.D., a second state agency physician, reviewed Plaintiff's records and agreed with Dr. Lateef's assessment. (*Id.* at 51.)

**B.    Procedural Posture**

Plaintiff filed applications for disability insurance benefits and supplemental security income on January 28, 2011, alleging disability as of January 1, 2004. (ECF No. 9-8 at 4–16.) The applications were initially denied on April 25, 2011, (ECF No. 9-5 at 2–11), and upon reconsideration on June 9, 2011, (*id.* at 14–19).

A hearing was held before Administrative Law Judge Jack Penca (the "ALJ") on September 26, 2012. (ECF No. 9-3 at 2–33.) On October 4, 2012, the ALJ issued an unfavorable decision.[1] (ECF No. 9-2 at 13–38.) The Appeals Council denied review of the ALJ's decision on February 19, 2014. (*Id.* at 2–6.)

On April 11, 2014, Plaintiff filed the Complaint in this Court. (ECF No. 2.) Plaintiff subsequently filed Plaintiff's Motion on July 22, 2014, (ECF No. 10), and Defendant filed Defendant's Brief on August 21, 2014, (ECF No. 12).

---

[1] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since January 1, 2004, the alleged onset date." (ECF No. 9-2 at 18.) At step two, the ALJ found that Plaintiff has the following severe impairments: "osteoarthritis; chronic obstructive pulmonary disease; bipolar disorder; panic disorder; obesity; major depressive disorder, moderate, recurrent with psychotic features." (*Id.* at 21–23.) At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 23–25.) The ALJ next found that Plaintiff has the residual functional capacity to "perform work at the light exertional level," with certain listed limitations. (*Id.* at 25–30.) At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." (*Id.* at 30.) Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 30–31.) The ALJ relied on the testimony of a vocational expert in making this step-five determination. (*See id.* at 31.)

On July 31, 2015, Magistrate Judge Tinsley filed the PF&R, in which he recommends that this Court grant Plaintiff's Motion, insofar as it requests remand of this matter, deny Defendant's Brief, reverse the final decision of the Commissioner, and remand this case. (ECF No. 13.) The Magistrate Judge's sole basis for these recommendations is his finding "that the ALJ's decision was not supported by substantial evidence because the ALJ failed to properly weigh[] the evidence of record and explain his findings related thereto." (*Id.* at 11.) In particular, the Magistrate Judge found that the ALJ "did not discuss the weight given to [Plaintiff's] performance IQ score of 57 from the [WISC-III Test] administered on January 27, 1993." (*Id.*) Defendant timely filed the Objections on August 12, 2015. (ECF No. 14.)

## II.  Standard of Review

### A.  Review of the PF&R

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B.  Review of the ALJ's Findings and Decision

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see, e.g.*, 42 U.S.C. § 405(g)

("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Plaintiff "bears the burden of proving that he is disabled within the meaning of the Social Security Act." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) and *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[2] *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4). The claimant bears the burden of proof at

---

[2] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "If [the adjudicator] can find that [a claimant is] disabled or not disabled at a step" in the "sequential evaluation" process, the adjudicator "make[s] [their] determination or decision and [does] not go on to the next step." 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

### III. Discussion

**A.     Defendant's Objections to the PF&R**

Defendant argues, in pertinent part, that the Magistrate Judge was incorrect in finding that the ALJ erred in not considering Plaintiff's WISC-III Test scores. (*See* ECF No. 14 at 1–5.) The Court agrees.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record . . . ." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). However, "an ALJ . . . is not required to act as claimant's counsel." *Weise v. Astrue*, Civil Action No. 1:08–0271, 2009 WL 3248086, at *4 (S.D. W. Va. Sept. 30, 2009) (citing *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994)). "[A]n 'ALJ is entitled to assume that a claimant represented by counsel is making his strongest case for benefits.'" *Id.* at *5 (quoting *Nicholson v. Astrue*, 341 F. App'x 248, at *4 (7th Cir. 2009)).

---

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d at 264–65; *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).

"It is the claimant's ultimate responsibility to prove to the Commissioner that he is disabled." *Id.* (citing 20 C.F.R. §§ 404.1512(a) & 416.912(a)). It is also the claimant's duty to "inform [the ALJ] about or submit all evidence known to [the claimant] that relates to whether or not [the claimant is] . . . disabled." 20 C.F.R. §§ 404.1512(a) & 416.912(a); *see also Yuckert*, 482 U.S. at 146 n.5 ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). Additionally, "[w]hile an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citation omitted). As such, "an ALJ 'is not obliged to investigate a claim not presented at the time of the [benefits] application . . . and not offered at the hearing as a basis for disability.'" *Meyer v. Colvin*, 754 F.3d 251, 256–57 (4th Cir. 2014) (alterations in original) (quoting *Halverson v. Astrue*, 600 F.3d 922, 934 (8th Cir. 2010)); *see also Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) ("The ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record. Because [the claimant] never raised the issue of mental impairment until this appeal, [the claimant] cannot say that he put his mental impairments before the ALJ."); *cf. Smith v. Sullivan*, 896 F.2d 547, at *2 (4th Cir. 1990) ("[W]e find that the ALJ had no duty to further develop the record regarding claimant's alleged 'nervous breakdown' since none of claimant's examining physicians suggested that he suffered from any mental or emotional impairment.").

In this case, Plaintiff asserts that the ALJ erred by not considering Plaintiff's WISC-III Test results in his disability analysis. (ECF No. 11 at 1, 3–6.) However, Plaintiff did not allege any type of intellectual impairment in the materials related to his applications for benefits. (*See* ECF No. 9-

8

9 at 2–42; *see also id.* at 46–75 (providing materials related to Plaintiff's appeals, in which he does not allege any type of intellectual impairment).) Instead, Plaintiff alleged that he is disabled due to "[e]xtreme anxiety, migraines, arthritis in knees and back," "[a]sthma," and "allergies." (*Id.* at 6.) In addition, Plaintiff never raised the issue of intellectual impairment at any point during the disability hearing.[3] (*See* ECF No. 9-3 at 2–33.) Indeed, Plaintiff's counsel even failed to address such an impairment when questioning the vocational expert ("VE") after the ALJ provided a hypothetical question that omitted any reference to intellectual impairment. (*See id.* at 31–33.)

Undoubtedly, the ALJ has a duty to develop the record. *See, e.g.*, *Cook*, 783 F.2d at 1173. However, Plaintiff retains the burden of proving that he is disabled. *See, e.g.*, 20 C.F.R. §§ 404.1512(a) & 416.912(a). Plaintiff failed to raise his purported intellectual impairment to the ALJ in either his applications for disability or at the disability hearing. (*See* ECF No. 9-9 at 2–42

---

[3] Plaintiff's counsel provided the following statement, in its entirety, during his opening remarks at the disability hearing:

> Your honor, [Plaintiff] is a 33-year-old male that had quit school in the eighth grade some time ago and while he was incarcerated, he achieved a GED over a two-year period. There are a number of things that he suffers from. When you break them down into the mental category, he suffers from depression with psychotic features and is currently amongst other things, being prescribed Geodon and has just recently been switched from Seroquel to Geodon. He also suffers from anxiety that is quite well documented by Dr. Omar Hasan. According to the exhibits that I have, I have a mental residual functional capacity assessment by Dr. Hasan where he opines that in four different categories, Mr. Swafford functions at the poor end of the spectrum.
> Also, I have listed in 26F, I believe it is, that the physical residual functional capacity assessment form provided by his treating physician, Dr. Jafary -- he opines as to the problems that he has physically that includes, but is not limited to, osteoarthritis of the knee. He's a diabetic. He has chronic back pain. Suffers from uncontrolled hypertension and also has COPD. I failed to mention in the mental category that Sonny Bell, an examiner for the Social Security Administration at 5F, after examining Mr. Swafford found that he had a poor prognosis as well.
> We certainly will rely upon the treating physician's statements provided by way of the NRFCA and PRFCA and we certainly believe that the combination of both, and possibly either of them would stand alone to disable Mr. Swafford today, Your Honor.

(ECF No. 9-3 at 6–7.) This statement references two mental examinations: (1) an examination by Sonny Bell; and (2) a mental residual functional capacity examination performed by Dr. Hasan. (*Id.*) Neither of these examinations reference an intellectual impairment. (*See* ECF No 9-17 at 15–22 (constituting the "Disability Determination Examination" by Sonny Bell); ECF No. 9-24 at 60–62 (providing the mental residual functional capacity examination by Dr. Hasan).)

(providing materials related to Plaintiff's applications for disability); ECF No. 9-3 at 2–33 (constituting the transcript of Plaintiff's disability hearing).) As such, he cannot now claim that the ALJ erred by failing to explore this unstated impairment. *See Meyer*, 754 F.3d at 256–57 ("[A]n ALJ 'is not obliged to investigate a claim not presented at the time of the [benefits] application . . . and not offered at the hearing as a basis for disability.'" (second and third alterations in original) (quoting *Halverson*, 600 F.3d at 934)). The Court therefore finds that the Magistrate Judge was incorrect in finding that the ALJ erred by failing to consider Plaintiff's WISC-III Test scores. Accordingly, the Court **SUSTAINS** the Objections, (ECF No. 14), and **DECLINES TO ADOPT** the PF&R, (ECF No. 13).

The Court notes that, in addition to his assertion regarding Plaintiff's intellectual capacity, Plaintiff also raises an additional pertinent argument in his memorandum in support of Plaintiff's Motion―that the ALJ failed to assign proper weight to the opinion evidence of a treating physician (Dr. H. Jafary). (ECF No. 11 at 2, 13–16.) The Court further notes that the Magistrate Judge declined to address this argument in the PF&R. (*See* ECF No. 13 at 11–12 ("Because the court has proposed remand on [the] grounds" that the ALJ failed to consider Plaintiff's WISC-III Test scores, "the court finds it unnecessary to address the specific issues raised in the parties' cross-motions for judgment on the pleadings").) The Court therefore addresses this argument here.

**B.      The Weight the ALJ Accorded to the Opinion of a Treating Physician**

In his memorandum in support of Plaintiff's Motion, Plaintiff argues that the ALJ erred by failing "to assign proper weight" to the opinion evidence of a treating physician―Dr. Jafary. (ECF No. 11 at 13–16.) The Court agrees with Plaintiff's position.

"Medical opinions are statements from physicians and psychologists or other acceptable

medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). *See generally* Soc. Sec. Admin. *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-03P (Aug. 9, 2006) (providing the Commissioner's list of acceptable medical sources). The ALJ generally must "give more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2) ("If [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record, we will give it controlling weight."). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

If the ALJ does not accord the treating source's opinion controlling weight, then the ALJ must determine "the weight to give the opinion" based on the following factors: (1) the length of

treatment of the claimant by the treating source; (2) the frequency of examination by the treating source; (3) the nature and extent of the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; (6) the specialization of the source; and (7) any other relevant factors. *Id.* §§ 404.1527(c) & 416.927(c). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (citations omitted).

Plaintiff argues that the ALJ accorded insufficient weight to the opinion of a treating physician—Dr. Jafary. (*See, e.g.*, ECF No. 11 at 13–16.) In an opinion dated August 16, 2012, Dr. Jafary opined that Plaintiff has the following limitations: (1) he can occasionally lift or carry 10 pounds; (2) Plaintiff can frequently lift or carry weights less than 10 pounds; (3) he can only stand or walk for less than 2 hours in an eight-hour workday; (4) Plaintiff can sit for less than roughly 6 hours in an eight-hour workday; (5) Plaintiff's ability to push or pull is limited in both the upper and lower extremities; (6) he can never climb, balance, kneel, crouch, crawl, or stoop; (7) Plaintiff can only occasionally reach in all directions, handle, finger, and feel; (8) his ability to see and hear is limited; and (9) Plaintiff is limited in his ability to function with temperature extremes, noise, dust, vibration, humidity/wetness, hazards, fumes, odors, chemicals, and gases. (ECF No. 9-22 at 86–89.) The ALJ accorded this opinion "no weight," (ECF No. 9-2 at 29), and omitted many of Dr. Jafary's August 16, 2012 opinions in his RFC determination, (*see id.* at 25.)

The ALJ provided the following discussion—in its entirety—regarding why he accorded Dr. Jafary's August 16, 2012 opinion no weight:

> [I]n assessing [Plaintiff's] residual functional capacity, I have given no weight to Exhibit 26F, an opinion from Dr. Jafary dated August 16, 2012. Dr. Jafary finds extreme limitations including limitations in seeing and hearing, which are simply not supported by the medical records; accordingly, this eliminates any credibility of his assessment. Indeed, a treatment note dated July 18, 2012, from Dr. Powers; a physician associate of Dr. Jafary, reveals no complaints as to hearing or vision difficulties . . . .

(ECF No. 9-2 at 29.) The ALJ provides no further discussion in his opinion regarding why he accorded the opinion of Dr. Jafary no weight. (*See id.* at 16–32.)

The Court finds that the ALJ's weight determination as to Dr. Jafary's August 16, 2012 opinion is not supported by substantial evidence. Dr. Jafary opined that Plaintiff has a wide range of extreme physical limitations. (*See* ECF No. 9-22 at 86–89.) The ALJ specifically noted that Dr. Jafary's opinions regarding Plaintiff's ability to see and hear are not supported by his colleague's opinion. (ECF No. 9-2 at 29.) However, the ALJ fails to address why he gave no weight to the remainder of Dr. Jafary's opinion. (*See id.*) Instead, the ALJ states only that Dr. Jafary's findings "are simply not supported by the medical records." (*Id.*) This vague and conclusory assertion provides no guidance to the Court in determining how Dr. Jafary's remaining findings are not supported by the record. Furthermore, the ALJ fails to discuss contradictory evidence as to many of Dr. Jafary's specific findings in the remainder of the decision. (*See id.* at 16–32.)

Ultimately, the ALJ's analysis regarding why he accorded Dr. Jafary's August 16, 2012 opinion no weight leaves the Court to guess as to the ALJ's rationale, as well as the contradictory evidence he references, but never discusses. These deficiencies completely frustrate the Court's ability to perform a meaningful review of the ALJ's determination regarding Dr. Jafary's opinion and, as such, constitute clear error. *See, e.g.*, *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) ("[R]emand may be appropriate . . . where . . . inadequacies in the ALJ's analysis frustrate

13

meaningful review." (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013))); *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985))). The Court thus finds that the ALJ erred in according Dr. Jafary's August 16, 2012 opinion no weight without providing a basis for this determination.

However, this finding of error in the ALJ's decision does not end the instant analysis. If an administrative law judge errs in a part of their decision, the court "should nonetheless affirm the ALJ's decision," so long as "the court finds the error to be 'harmless.'" *Held v. Colvin*, Civil Action No. 7:12–CV–00457, 2014 WL 556266, at *8 (W.D. Va. Feb. 12, 2014) (citation omitted). *See generally Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."). An error is harmless if it "clearly had no bearing on the procedure used or the substance of the decision reached." *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964)). Stated another way, "[r]emand is not required where, despite [the] ALJ's error, [the] ALJ would have reached the same result notwithstanding his error." *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D. W. Va. 2009) (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)); *see also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that an administrative law judge's error is harmless if it "was inconsequential to the ultimate disability determination" (citations omitted)); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in

quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (citing *Illinois v. Interstate Commerce Comm'n*, 722 F.2d 1341, 1349 (7th Cir. 1983))).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted); *see also Camp v. Massanari*, 22 F. App'x 311, at *1 (4th Cir. 2001) (finding that an error by the administrative law judge was harmless when the plaintiff "made no showing of prejudice"). In *Shinseki*, the Supreme Court analogized "review of ordinary administrative proceedings to appellate review of civil cases" in the context of a harmless error determination and provided the following useful discussion:

> To say that the claimant has the "burden" of showing that an error was harmful is not to impose a complex system of "burden shifting" rules or a particularly onerous requirement. In ordinary civil appeals, for example, the appellant will point to rulings by the trial judge that the appellant claims are erroneous, say, a ruling excluding favorable evidence. Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm. If, for example, the party seeking an affirmance makes a strong argument that the evidence on the point was overwhelming regardless, it normally makes sense to ask the party seeking reversal to provide an explanation, say, by marshaling the facts and evidence showing the contrary. The party seeking to reverse the result of a civil proceeding will likely be in a position at least as good as, and often better than, the opposing party to explain how he has been hurt by an error.

556 U.S. at 409. *See generally Garner v. Astrue*, 436 F. App'x 224, 226 n.* (2011) (citing *Shinseki* in a harmless error discussion in a social security disability case).

The Court finds that the ALJ's error in failing to provide the basis for his decision to accord no weight to Dr. Jafary's August 16, 2012 opinion is not harmless. The ALJ omitted many of Dr. Jafary's opinions regarding extreme physical limitations from the RFC finding. (*See* ECF 9-2 at 25.) At step five of the "sequential evaluation" process, the ALJ incorporated his RFC findings

15

into the hypothetical he provided to the VE. (*Id.* at 31.) *See generally Mascio*, 780 F.3d at 636 (stating that "ALJs clearly use the [RFC] finding at steps four and five" of the "sequential evaluation" analysis (citation omitted)). The ALJ's hypothetical question to the VE was as follows:

> I'm going to ask you to assume an individual with [Plaintiff's] age, education and work history who can perform work at the light exertional level, who can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. Who can occasionally balance, stoop, kneel, crouch and crawl and also avoid concentrated exposure to extreme cold, to extreme heat, wetness, humidity, fumes, odors, dust, gas and poor ventilation, who must avoid all exposure to hazards, such as moving machinery and unprotected heights. And who can have occasional interaction with supervisors, co-workers and the public.

(ECF No. 9-3 at 29.)[4] Based on this hypothetical, the VE testified that jobs exist in the national economy for an individual with Plaintiff's functional limitations. (*See* ECF No. 9-2 at 31; ECF No. 9-3 at 29–30.) The ALJ then relied on this testimony to find that Plaintiff is "not disabled." (ECF No. 9-2 at 31.)

However, the VE's opinion changed when the hypothetical included the limitations opined by Dr. Jafary. During the disability hearing, Plaintiff's attorney and the VE engaged in the following exchange:

> [Plaintiff's Attorney:] I'm going to give you a new and unique hypothetical based upon [a] medical source statement[] that [has] been provided to us by [Plaintiff's] physical doctor, Dr. Jafary . . . . First of all on the exertional level, if you take an individual with the age, education and work experience as we have, and you add these physical limitations, an individual that could lift or carry 10 pounds, occasionally, could frequently lift 10 pounds. That could stand and/or walk less than two hours' total in an eight-hour workday, that could sit less than six hours in an eight-hour workday and would be limited in pushing and pulling in his upper extremities and lower extremities, and could never climb, balance, kneel, crouch, crawl or stoop. And would be limited in reaching in all directions, handling, fingering and feeling. And could occasionally reach, handle -- if their manipulative limitation is limited, how often could they do them. He could occasionally reach,

---

[4] The ALJ asked the VE follow-up questions with slight alterations to the hypothetical. (*See* ECF No. 9-3 at 29–31.) However, none of these additional questions included any of the extreme physical limitations included in Dr. Jafary's August 16, 2012 opinion. (*See id.*)

>occasionally handle, occasionally finger, and occasionally feel. And is also limited in seeing and hearing. Now, if you just take those physical limitations, are you able to name any jobs in the national economy that such and [sic] individual could do?
>
>[VE:] No, sir.

(*Id.* at 51–52.) Based on this exchange, it is clear that the VE could have materially altered his testimony if the hypothetical question included some or all of the limitations identified by Dr. Jafary in his August 16, 2012 opinion. (*See id.*) As the ALJ relied on the VE's testimony to reach his decision of "not disabled," (ECF No. 9-2 at 31), the Court cannot find that the ALJ's decision would have been the same had he accorded Dr. Jafary's August 16, 2012 opinion some measure of weight and included this opinion evidence in the RFC and hypothetical question. The Court therefore finds that the ALJ's error in failing to provide the requisite justification for according no weight to the opinion evidence of a treating physician—Dr. Jafary—is not harmless error. *See, e.g.*, *Ngarurih*, 371 F.3d at 190 n.8 (stating that an error is harmless if it "clearly had no bearing on the procedure used or the substance of the decision reached" (quoting *Mass. Trs. of E. Gas & Fuel Assocs.*, 377 U.S. at 248)).

In summary, the Court finds that the ALJ erred by failing to provide sufficient evidence to support his determination to accord no weight to the August 16, 2012 opinion of Dr. Jafary and that this error was not harmless. When faced with this type of error, the proper course is to remand the case. *See, e.g.*, *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) ("[R]emand may be appropriate . . . where . . . inadequacies in the ALJ's analysis frustrate meaningful review." (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013))). Accordingly, the Court **DENIES**

Defendant's Brief, (ECF No. 12), and **GRANTS** Plaintiff's Motion, (ECF No. 10), insofar as it requests remand of this case.[5]

### IV. Conclusion

For the reasons provided above, the Court **SUSTAINS** the Objections, (ECF No. 14), **DECLINES TO ADOPT** the PF&R, (ECF No. 13), **GRANTS** Plaintiff's Motion, (ECF No. 10), insofar as it requests remand of this case, **DENIES** Defendant's Brief, (ECF No. 12), **REVERSES** the final decision of the Commissioner, **REMANDS** this case pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order, and **DISMISSES** this action from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: September 30, 2015

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[5] The Court notes that—in his memorandum in support of Plaintiff's Motion—Plaintiff also argues that the ALJ erred by (1) failing to adequately weigh the opinion evidence of "his treating Psychiatrist, Omar Hasan;" and (2) not calling "upon the services of either a Medical or Psychological Consultant at the hearing." (ECF No. 11 at 2–3.) As the Court remands this case on other grounds, it does not reach these remaining arguments.